UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT T.,

               Plaintiff,                        **DECISION AND ORDER**

    v.
                                                  1:20-CV-00930-EAW

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

## INTRODUCTION

      Represented by counsel, Plaintiff Robert T. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

      Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 12; Dkt. 14). For the reasons discussed below, the Plaintiff's motion (Dkt. 12) is denied and the Commissioner's motion (Dkt. 14) is granted.

## BACKGROUND

Plaintiff protectively filed his application for SSI on May 23, 2017.  (Dkt. 10 at 167-72).[1]  In his application, Plaintiff alleged disability beginning December 1, 2011.  (*Id.* at 167).  Plaintiff's application was initially denied on July 18, 2017.  (*Id.* at 71-78).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Theodore Kim on April 29, 2019.  (*Id.* at 33-69).  On May 28, 2019, the ALJ issued an unfavorable decision.  (*Id.* at 18-29).  Plaintiff then requested review by the Appeals Council, which the Council denied on May 19, 2020, making the ALJ's determination the final decision of the Commissioner.  (*Id.* at 4-6).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 416.929), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.   The ALJ's Decision

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis set forth in 20 C.F.R. § 416.920.  (Dkt. 10 at 20-29).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since December 1, 2011, the alleged onset date.  (*Id.* at 20).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: degenerative disc disease of the lumbar spine with spondylosis and stenosis, obesity, transient ischemic attack, degenerative disc disease of the cervical spine with

radiculopathy, left shoulder acromioclavicular (AC) joint arthritis and impingement, and right knee osteoarthritis. (*Id*. at 21). The ALJ also determined that Plaintiff's hypertension, tobacco use disorder, hypercholesterolemia, hyperlipidemia, and hyperhidrosis were non-severe impairments. (*Id*.).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*.). Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform a full range of light work with several exertional limitations. (*Id*. at 22). Specifically, the ALJ determined that Plaintiff could stand up to five minutes after every thirty minutes of sitting, sit down up to five minutes after every thirty minutes of standing while remining on task, frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities, and move his head side to side and up and down. (*Id*.). The ALJ also determined that Plaintiff could occasionally push, pull, operate foot controls with both lower extremities, kneel, crouch, stoop, balance, crawl, climb stairs, and ramps, but could never climb ladders, ropes, and scaffolds, or be exposed to unprotected heights and moving mechanical parts. (*Id*.). Lastly, the ALJ determined that Plaintiff could be off-task five percent of the workday. (*Id*.).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 27). He then proceeded to step five, where, relying on the testimony of a vocational expert ("VE"), the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as the occupations of a mail clerk, general office helper, and shipping and receiving clerk. (*Id.* at 28).

Accordingly, the ALJ determined that Plaintiff was not disabled from the alleged onset date through the date of his decision.  (*Id.* at 29).

## II.  The Commissioner's Determination is Supported by Substantial Evidence

Under recent amendments to the Social Security regulations related to the evaluation of medical evidence for disability claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 416.920c(a).[2]  Instead, the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all prior administrative medical findings" in claimant's record based on the following five factors: supportability, consistency, relationship with the claimant, specialization, and "other factors."  *Id.* § 416.920c(c).  The source of the opinion is not the most important factor in evaluating its persuasive value.  *Id.* § 416.920c(b)(2).  Rather, the most important factors in evaluating persuasiveness are supportability and consistency.  *Id.*

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions."  *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (internal citation omitted).  "Even though ALJs are no longer directed to afford controlling weight to treating source

---

[2]    Because Plaintiff's claim was filed on May 23, 2017, the new regulations, codified at 20 C.F.R. § 416.920c, apply.

opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original) (internal citations omitted).

Plaintiff argues that the ALJ erred in formulating a highly specific RFC, particularly its provisions related to Plaintiff's position changes and off-task time, which, he submits, were not supported by the record. (Dkt. 12-1 at 8-14). Specifically, Plaintiff argues that the ALJ erroneously relied on two medical opinions contained in the record–one of the state medical consultant Dr. Feldman and another one of consultative examiner Dr. Brauer– neither of which contained the limitations related to postural and off-task time identified by the ALJ. (*Id.*). The Court disagrees for the following reasons.

An RFC is an assessment of "the most [plaintiff] can still do despite [his] limitations," and it is the ALJ who is tasked with making the RFC determination based on a review of the entire record. 20 C.F.R. §§ 416.920(e); 416.945(a). Even though the ALJ has the responsibility to determine the RFC, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. *Id.* at §§ 416.912(a), 416.946(c). That is why, when reviewing the Commissioner's disability determination, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) (internal citations and quotations omitted).

It is true that neither the opinion of Dr. Feldman, nor of Dr. Brauer, contained the exact postural and off-task limitations that the ALJ identified in Plaintiff's RFC. However, the Court, finds that the ALJ properly relied on both opinions, as well as the rest of the record, to formulate Plaintiff's RFC. Specifically, when analyzing Dr. Feldman's opinion, the ALJ found it persuasive because it was consistent with Plaintiff's hearing testimony and objective medical evidence demonstrating Plaintiff's extensive history of degenerative disc disease of the lumbar and cervical spine, obesity, left shoulder acromioclavicular joint arthritis and impingement, and right knee osteoarthritis. (Dkt. 10 at 26). Even though Dr. Feldman did not personally examine Plaintiff, he, nonetheless, relied on the record to determine that Plaintiff was limited to light work, and that he did not have any postural, manipulative, or environmental limitations, and was able to push, pull, lift, and carry 20 pounds occasionally and 10 pounds frequently. (*Id*. at 70-76). The only limitation that related to Plaintiff's ability to sit and stand was Dr. Feldman's determination that Plaintiff was able to sit and stand for six hours in an eight-hour workday. (*Id*.).

As to Dr. Brauer's opinion, the ALJ properly found it to be "somewhat persuasive" because it was not "wholly consistent" with the medical evidence contained in the record. (*Id*. at 26). In fact, during Dr. Brauer's examination, Plaintiff was not in acute distress, had normal gait and stance, full bilateral flexion, extension, and rotary movement in the cervical and lumbar spine, could squat fully, walk on heels and toes, and rise from the exam chair without any difficulty. (*Id*. at 285-86). Dr. Brauer observed Plaintiff having no scoliosis, kyphosis, or abnormality on his thoracic spine, having stable and nontender joints, supple neck with no masses, and bilateral full range of motion of his upper and lower

extremities.  (*Id*. at 286).  As a result of his examination, Dr. Brauer ultimately concluded that Plaintiff did not have any limitations in his ability to sit, stand, walk, climb, push, pull, lift, or carry objects.  (*Id*. at 288).  While these findings may have been supported by Dr. Brauer's observations made during Plaintiff's examination, the ALJ properly found them to be only "somewhat persuasive" because they were not entirely consistent with Plaintiff's hearing testimony and the rest of the record that demonstrated Plaintiff's continuous complaints of chronic neck and lower back pain, right side weakness, and left shoulder and right knee pain due to generative disc disease of his lumbar and cervical spine, left shoulder AC joint arthritis and impingement, and osteoarthritis in his right knee.  (*Id*. at 27).  *See Darla W. v. Comm'r of Soc. Sec*., No. 5:20-cv-1085 (TWD), 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) ("The consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion—it measures whether the medical opinion is consistent with *all* medical and nonmedical evidence in a claim.") (emphasis in the original).

Plaintiff's argument that the ALJ determination regarding Plaintiff's postural and off-task limitations should have been based on a particular medical opinion is misplaced. It has been well-determined that RFC is an administrative, and not a medical assessment, and an ALJ, who is tasked with formulating a claimant's RFC based on the review of the record as a whole, can do so without the benefit of a medical opinion.  *Curry v. Comm'r Soc. Sec*., 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (an RFC finding "is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear").  The Second Circuit has held where "the record

contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required[.]"  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted); *see also Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.'") (internal citations omitted).

Contrary to Plaintiff's assertions, the ALJ did not provide his own interpretation of the medical evidence.  Even though he found Dr. Feldman's opinion persuasive and Dr. Brauer's opinion "somewhat persuasive," the ALJ considered the record as a whole and adopted the limitations identified by both physicians to formulate a more restrictive RFC than that identified by either physician.  *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (upholding the ALJ's decision where "the ALJ occasionally deviated from the consultative examiners' recommendations to *decrease* [plaintiff]'s RFC based on other evidence in the record") (italics in original).  In fact, taking into consideration Dr. Feldman's restrictions regarding Plaintiff's ability to sit and stand for six hours in an eight-hour workday, the ALJ further limited such ability by allowing Plaintiff to change position every thirty minutes, stand up to five minutes after every thirty minutes of sitting, and sit for up to five minutes after every thirty minutes of standing.  (Dkt. 10 at 22).  This determination was also consistent with Dr. Brauer's opinion, who determined that Plaintiff had no limitations in his ability to sit and stand.  (*Id.*).

Plaintiff's argument that the ALJ erred in determining that he would be off-task 5% of the workday is also unavailing because the RFC determination does not have to perfectly correspond with any of the opinions of medical sources as long as it is supported by the record. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  As illustrated by the court in *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016), "the fact that the ALJ assigned a particular percentage range (0-10%) to illustrate [plaintiff's] limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence."  Substantial evidence "means–and means only–such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Here, the ALJ's determination that Plaintiff was able to perform light work with additional off-task, as well as postural, manipulative, and environmental limitations, was supported by both medical opinions, Plaintiff's hearing testimony, as well as the rest of Plaintiff's medical record.  Specifically, the ALJ's off-task and postural limitations accommodate Plaintiff's subjective complaints and hearing testimony of his disabling neck and back pain.  Plaintiff testified that he could not sit or stand for too long, and required switching between sitting, standing, and walking throughout the day.  (Dkt. 10 at 47, 49, 54, 59).  He indicated that he was able to perform his part-time job as a cleaner because he could alternate between sitting and standing, and take frequent breaks throughout the workday.  (*Id*.).  He also testified that he did a lot of walking, was able to sit for 30 to 45 minutes while getting dressed in the morning, sit for 20 minutes before his back locked, and perform various household chores when he took breaks.  (*Id.* at 56).

Plaintiff's testimony about the nature of his back and neck pain was supported by treatment records of Plaintiff's providers, who diagnosed him with protrusion, extrusion, and recess of several discs in his cervical and lumbar spine during the course of their treatment, and often documented Plaintiff's subjective complaints of neck and back pain, right side weakness and numbness, and loss of coordination. (*Id*. at 239, 256, 258, 264). However, with the exception of Plaintiff having tender neck and slightly limited strength during some of his visits, Plaintiff's treating physicians reported generally non-remarkable examinations when he had normal range of motion and strength in his back, supple and non-tender neck, normal motor function and full strength in his upper and lower extremities, and negative leg raises. (*Id*. at 236, 238, 260, 263-64, 268-69, 272, 274, 301, 303-05, 307, 310-11, 326-28, 331, 335-37, 349, 351, 359, 364, 384, 423, 427, 437, 439, 484-85). Notably, Plaintiff did not report having any back or neck pain, tenderness, or swelling in his joints during some of his visits, and indicated that his knee and low back pain was stable. (*Id*. at 355, 487).

Also notable here is Plaintiff's conservative course of treatment for his alleged disabling conditions. *Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (claimant receiving only conservative treatment is evidence that can weigh against allegations of disabling symptoms). In fact, even when Plaintiff's physicians observed him having tenderness in his back and a mildly diminished range of motion in his neck, they recommended Plaintiff to undergo physical therapy or consult with a specialist about possible nerve block therapy instead of prescribing a more invasive course of treatment. (Dkt. 10 at 337, 339, 352, 357, 364, 484, 486, 489). Indeed, Plaintiff's neurosurgeon did

not recommend any intervention to treat Plaintiff's neck pain.  (*Id.* at 264).  The record also demonstrates that Plaintiff's medical providers routinely prescribed Tylenol, Ibuprofen, or Naproxen to manage his pain, which often improved his symptoms.  (*Id.* at 264, 308, 311, 326, 349, 355, 360, 484, 487).  It also shows that on several occasions Plaintiff lost his script for physical therapy.  (*Id.* at 326, 484, 487); *see Salvaggio v. Apfel*, 23 F. App'x 49, 51 (2d Cir. 2001) ("[T]he result of the plaintiff's choice to seek only minimal medical attention of [his] symptoms . . . supports the finding that the plaintiff was not under a disability . . . .").

While giving the benefit of the doubt to Plaintiff's testimony about the limiting nature of his chronic neck and back pain, the ALJ properly took into account Plaintiff's conservative treatment history, history of noncompliance, as well as the evidence of his generally nonremarkable examinations to arrive at the RFC.  *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.") (internal citations omitted).

Although Plaintiff may disagree with the ALJ's conclusions, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would *have to conclude otherwise*."  *Morris*, 721 F. App'x at 29 (emphasis in original) (internal citations and quotations omitted).  Therefore, the question before this Court "is not whether substantial evidence support plaintiff's position,

but whether it supported the ALJ's decision." *Anderson v. Colvin*, No. 1:14-CV-01038 (MAT), 2017 WL 2797913, at *3 (W.D.N.Y. June 28, 2017).   "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (internal quotation marks omitted).

Here, Plaintiff did not identify any medical evidence in the record that supported a more restrictive RFC, and the Court finds that the record does not demonstrate that any limitations beyond those identified in the RFC were warranted.   Therefore, Plaintiff has failed to meet his burden to demonstrate that he had a more restrictive RFC than found by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (plaintiff failed his duty to prove a more restrictive RFC).   For the reasons stated above, the Court finds that the RFC determination was supported by substantial evidence.   Accordingly, there is no basis for remand or reversal.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      June 1, 2022
            Rochester, New York

- 14 -